I am Jason Caliphate, representing the appellant petitioner Donald Warren. If I may, I'd like to reserve five minutes for rebuttal. Your Honors, this case at its core is about a man who is presently serving a 36-year sentence in the Arizona Department of Corrections who was very likely incompetent, not competent to enter into a no-contest plea back in August of 1994, or rather he was sentenced in August of 1994. This appeal is from the disposition of three claims at the habeas corpus proceeding level in the Arizona District Court, the first claim being an ineffective assistance of counsel under the Sixth Amendment. There are two subparts to that claim. First was that the trial counsel failed to bring the issue of competency to the trial court's attention at the initial stages before any post-conviction relief proceedings had been initiated. During the course of representation at the trial level, trial counsel actually looked into the medical records and evaluations of Mr. Warren, because Mr. Warren had a decades-long history of post-traumatic stress disorder. He had been and has been found gravely disabled by the Veterans Administration, in fact, 100% disabled. Interestingly, 90% of that was attributed to his post-traumatic stress disorder and 10% of that to a physical injury to his back, although all of the initial doctors' reports regarding his back injury were that it was psychosomatic. They could not actually find physical injury. So I think it could be a fair conclusion that 100% of his disability is due to his post-traumatic stress disorder, which comes out in the form of auditory hallucinations persistently. He has a hard time just grasping with everyday life. This is decades-long medical reports on this. His trial counsel looked into that and, in fact, noticed an insanity defense. After noticing the insanity defense, the mechanisms by which experts are appointed by each side took place. The State had two experts look into Mr. Warren's possible lack of sanity, and one of them --. Lack of sanity to commit the crime. The lack of ability to actually appreciate the difference between right and wrong at the time of the offense. Because it's a little different from sanity to enter into a plea or to cooperate with your lawyer or whatever. Exactly. In other words, what the issue was was competence versus sanity. And that would help explain why, of the four experts who were appointed, two were retained by the defense, and two were appointed through the State. Of those four, only one actually looked at the issue of competency, because competency, as the court pointed out, is a different issue than whether or not he understood right from wrong at the time of the offense. And so what it appears is that this Dr. Harrison actually took the additional step during the course of his evaluations to look into the competency. And at that time, when he looked over Mr. Warren, he met with him three times in June and July of 1993 and issued a report in mid-August of 1993. So in other words, over about a three-week period, he met with him three times, and then about a month later issued a report, and in that report found him to be competent. Now, a year goes by until he actually enters into a change of plea and is sentenced on the matter. In the interim year, his counsel had decided that the guilty except insane is what they call it now, but an insanity defense, was too difficult and persuaded Mr. Warren to enter into a change of plea. Now, afterwards, we've learned the counsel's decision was based on he thought that he could convince a trial judge to place Mr. Warren in a treatment facility as opposed to prison. Well, you know, there were a couple of other counts that were dismissed, too, as part of the deal, weren't there? That is true. There were a couple of other counts. However, the counts that he pled no contest to were the most egregious accounts, were three counts of manslaughter and one count of aggravated assault at the same level. He knew, too, that knowing right from wrong about what driving while under the influence of drugs and alcohol, that's what you had to know the difference between right and wrong about? As far as whether or not to drive, drive safely, drive carefully, that was the issue as far as. So he'd have to prove to a jury on an insanity defense that he lacked the capacity to understand right from wrong with regard to driving when he was under the influence of drugs. That would be true. That's true. That's an insanity defense. And the lawyer said, well, that's really a tough defense. It's really going to be tough. And maybe it would be better to plead him guilty and get this chance for the psychiatric treatment and along the way get rid of a couple of other counts. And you're saying that was ineffective assistance of counsel to make that recommendation to him? That was the second phase of the ineffective assistance of counsel, yes, given what was before him. The first phase was the issue of competency, not bringing that to the court's attention, advising a client to go through with a change of plea at all, irrespective of the reason why. Bringing it to the court's attention at the time that he changes his plea. Yes, sir. They had the, was it his psychiatrist, who said he hadn't given him a full competency evaluation or other. Yes, sir. But he was asked, the judge said, did he see anything wrong with him going ahead or understanding his lawyers? He said, no, I don't see anything wrong with that. Well, in the change of plea, it is interesting because at that phase, the state actually asked the court to put on the psychiatrist on the stand on the issue of competency. That's Dr. Zenner. Now, the issue is Dr. Zenner at that point, he was his treating psychiatrist. He was never employed by anyone to look at competency. And he admitted as much, that he had not done a competency evaluation. Furthermore, as his treating psychiatrist, ethically, he is not supposed to address a competency issue when the court's asked, because he's fulfilling a different duty. His duty to his client, my client at that time, was treatment. Treatment for the post-traumatic stress disorder, the hallucinations, and all of these things. It's interesting that the state calls Dr. Zenner to the stand. Defense counsel didn't ask any questions of Dr. Zenner. Not one. Didn't ask him if he, well, what did you look at for competency? Is competency really an issue or not? He just took whatever Dr. Zenner said. After the change of plea hearing goes forth, there are affidavits that my client says to his wife, what was that all about? During the course of the change of plea hearings on two occasions, he indicated he didn't necessarily understand what was going on. I believe he said, I'm a little confused in answer to a court question. That's when he talked to the lawyer and got it straightened out, as I understand the record. Well, and we don't know what was said between the lawyer and the client at the time. That's right. But on the record, yeah, they had a conference. Okay. They just had a conference. That's all we know. Is there evidence in the record that the lawyer's conversations and considerations were with the wife rather than with the defendant? Yes, ma'am, there are. In the reply in support of the first post-conviction relief petition, this was actually done by the same trial counsel, Michael Scott. In the reply in support of that, Michael Scott puts down the following. He says that in retrospect, I'm sorry, I didn't even say retrospect. He just puts down, I should have been more aware that there were competency issues. And number two, most of my discussions were with the wife, Marty, as opposed to the actual client. So, in other words, he's dealing mainly with the client's wife because the client is having such a hard time dealing. The client's in jail and the wife's not. Between the change of plea and the sentencing, the client was in jail. However, the client was not in jail up to the change of plea proceedings. So, in other words, he had full ability physically to deal with the client, but unfortunately the client could not deal with his attorney just based upon the problems he was having in the mental health area. And so what had happened was the trial counsel goes forward with the change of plea and never raises a competency issue. Okay, the state calls their, they call the treating psychiatrist at that time, who does not have the ability to give a full competency opinion because he hasn't done an evaluation. They go forward with sentencing. Okay, sentencing happens in August. Was there any objection raised to doctors in there giving that opinion? No, no. Trial counsel gave no objection. And that's part of the reason why you claim there's an ineffective system. Exactly. That's part of the reason. So then when we proceed to sentencing, at that point, the defense calls a couple of mental health professionals. One of them is a psychological counselor at the jail system in Phoenix. Joe Hill is his name. He's been there for years. He gives his opinions as to the depression that my client has been going at this time. The other one is Dr. Gwen Levitt. Dr. Levitt is someone who, similar to Dr. Zenner earlier, was a treating psychiatrist. In other words, at the change of plea hearing, my client's taken into custody, so now a jail psychiatrist has to take over that role because it's now in custody. That's Dr. Levitt. Dr. Levitt, on the stand, is asked by the judge, I'm sorry, asked specifically by the state, and the judge asks follow-up questions, if Mr. Warren is competent. And Dr. Levitt makes the right answer. As a treating psychiatrist, the answer is, I don't know, I didn't go into that, and that's outside of my role as a treating psychiatrist. So, in other words, she couldn't give an answer to that. And, again, the defense called this, asked Dr. Levitt to give testimony as to the hallucinations that Mr. Warren is going through, as to the effects of the post-traumatic stress disorder, as to the fact that he is still on these multiple medications and the effects they would have on him. Now, trial counsel files the first petition for post-conviction relief and does not raise ineffective assistance of counsel claims. What he does do is point out to the court, well, it's quite possible that Mr. Warren wasn't competent. I didn't raise that issue with the court, I should have. The court agrees and says, you should have raised that issue. He says, you know, in fact, no one asked this court to have a competency evaluation. Although the state had specifically requested one psychiatrist go on the stand, which is a big red flag, that's very uncommon at a change of plea hearing. The defense counsel had called a psychiatrist on the stand in sentencing, which the state again asked if the psychiatrist found him competent. So, apparently, the record indicates the state wasn't necessarily sure there was competence, because there's follow-up questions. The court tells, in its opinion on, excuse me, minute entry on October 10th, 1996, it does raise issue with the fact that trial counsel never raised the competency issue during dependency, before sentencing, and said, had you done so, maybe we would have looked into it, but because you failed to do so, by implication, I can rely on that failure. I can rely on your not raising the issue as your imprimatur that he is competent, as your stamp that he's okay, because you're his counsel. Now, what happens is the court now is left with this issue raised for the first time. Trial counsel makes the interesting statement that I should have been more concerned about the competency issue. Perhaps I should have raised it. And in a footnote in the pleadings that the PCR level puts, I am aware that this may create a conflict. I will withdraw immediately if the court so orders. In other words, it appears that he's aware of an ineffective assistance of counsel claim at that point. The court doesn't go into that. Instead, the court says, well, let's just dispose of it right now. She looks at the report from Dr. Harrison, which had been done in mid-1993, a full year before. No contemporaneous reports. So in other words, nothing had been done for a year with regard to competency. Then at sentence, excuse me, at change of plea, she asked a couple questions of Dr. Zenner. He does not say he is competent. He just says, I think he understands. And that's what we have. And the year before, that was the psychologist, was it, who said he was competent? It was. In fact, that was a psychiatrist, actually. Dr. Harrison. He was. And he was one of the ones who was going through, for other reasons, evaluating whether the insanity defense would be available. He was one of the ones that said that. So at the change of plea hearing, we'll call it the first change of plea hearing because they sort of deferred everything until the sentencing. So at that first change of plea hearing, the competency question had been resolved by one psychiatrist a year earlier saying the defendant was competent. Right, even though no one had asked for that kind of evaluation. In other words, that wasn't something that was even on the table at that point. That's what you really considered at that time. Defense counsel wanted to know whether he could be successful in an insanity defense. Exactly, exactly. And so what had happened then is, and what we're left with is, unfortunately, because trial counsel was the counsel for the first PCR, which the district court has agreed was a conflict, that he should have withdrawn because an ineffective assistance of counsel claim appeared to be right at that point. And unfortunately, he's the one who should have raised it but couldn't because it's him. Because he's the one who did the first PCR, post-conviction relief, he doesn't raise ineffective assistance of counsel. He doesn't take a step back, let other counsel come in and get an affidavit as to what he should have done, call, you know, bring in experts as to what this is. He doesn't take these actions because he doesn't make the claim. The court goes ahead and makes its finding on competency. Ex post fact, after the fact, makes its finding. Then when new counsel is brought in, when new counsel finally comes in for the second post-conviction relief proceeding, the court simply refers back to its first finding. But its first finding was made at a time when the claim hadn't been fully brought out, and unfortunately, trial counsel died in the interim. And so while he was alive and could have helped and fully explained his failure to bring these issues to the attention of the court, he didn't do so. The court makes its finding. He dies. Unfortunately, Mr. Warren now finally has counsel who can raise the ineffective assistance of counsel claim without the conflict. And the court in its order from March of 1997, I believe, in the second PCR order, simply refers back to its first finding, saying, all of your arguments about this ineffective assistance of counsel, about the whole competency area, well, I've already handled those. I've already found him to be competent retroactively. And again, because of the issue of the same counsel doing it, it was not fully explored. It was not adequately presented, and that is the ineffective assistance of appellate counsel claim. And again, the district court agrees that was a conflict. The trial court never addressed the issue and its findings about the conflict, but it was. He should not have done it. But the district court refused to apply and, excuse my pronunciation, Siler or Cooler v. Sullivan. It's 446 U.S. 335. In that case, the court had found that if there is a conflict of interest and it goes right to the heart of it, the defendant doesn't need to demonstrate prejudice. In other words, we've already got it. The district court said, no, this is a clearly identifiable area of the conflict. What it goes to is clearly identifiable. It didn't affect the outcome because it was raised at the second PCR proceeding. So, in other words, the second PCR proceeding with new counsel corrected the error. That overlooks what I just brought up. The trial court's ruling on the competency in the first PCR became the basis for its ruling on the second PCR. In other words, the court just simply referred back to the conflict situation and said, well, I already made that ruling, neglecting to look at the fact that it wasn't fully explored because it was the same counsel doing it. It was a conflict. And this was the trial court, if you will, a sentencing court. It was not an appellate court. No, sir. This is trial court. The Arizona appellate courts on both occasions, at appellate level and supreme court level, simply issued some summary denial of review. Thank you. Thank you. May it please the Court, Katya Mayhew, Assistant Attorney General, representing the State of Arizona. I'm not sure you're quite behind the mic. Thank you, Your Honor. This Court need not and should not address petitioner's claims because of error. Equitable tolling was granted on the basis of petitioner's mental incapacity, when the record clearly shows that petitioner was represented by retained counsel who simply failed to take into account that 89 days of the 365-day grace period had lapsed at the front end of post-conviction relief. Where retained counsel files a habeas petition on what she thinks is day 364, it is a case of attorney miscalculation and cannot be attributed to the petitioner's incapacity. Therefore, the original finding of time ball must be, should be reinstated, Your Honors. I'd like to point out that the petitioner's allegations of incompetency are inherently inconsistent in their conclusory. Petitioner will have this court believe that he was incompetent during state proceedings because of the medications. On federal review, petitioner will have the court believe that he's incompetent because he was not on medications. Those two factors cannot be reconciled. And again, this begs the question, if petitioner is incompetent during federal proceeding, when was he restored to competency? There has not been a finding of incompetency at any point in time. Well, I guess the first question might be the claim of lack of due process because the state court did not order a competency hearing, and I think what you just argued was there was nothing brought to the court's attention or that was apparent before the court that would have required the court to order such a hearing, so there was no due process violation. Well, no, no, Your Honor, because the incompetency that I'm talking about at this time is the one that he's claiming occurred while the statute of limitations period was running out. Oh, you're still on the equitable tolling. Yes, I am, Your Honor. Okay, I'm sorry. Well, obviously this court has no questions on that issue. I guess I'll move on to the next issue. To the extent that the petitioner is entitled to fair or habeas review of his competency claim, he has already received his remedy. As the district court pointed out, its conclusion that a competency finding was not required exhausted the petitioner's entitlement to fair or habeas review. What the district court did is that it reviewed the state court record and concluded that the state court's decision not to order a competency hearing was not unreasonable. And this brings us to your question, Judge. There were no objective grounds known to the parties that the state court had created a bona fide doubt as to competency. Well, what about the fact that his counsel was feeling that he had to deal with the wife rather than with him? That, Your Honor, that assertion is not supported by the record. In terms of the fact that the petitioner wasn't released during the whole period of time, the proceedings took about 18 months to be resolved. Petitioner dealt with his attorney. His wife obviously was very involved, but there's no evidence in the record that the counsel primarily dealt with the wife. And if that's the case, it's also the case of appeal, because that's exactly what counsel asserted in her motion for a equitable tolling. She also primarily dealt with the wife. And she also says it was because of the petitioner's self-imposed isolationism. So those matters have not been resolved, and they weren't fleshed out in any way, shape or form. Before I continue, there are some things that I wanted to clarify. I'd like to point out that the state court did not issue a plea agreement. I want to point out that during the plea agreement, counsel asserts that it was the state who called the petitioner's treating physician to the court. But that was not the case. Dr. Zenner was put on this stand by petitioner. Petitioner called Dr. Zenner to address an issue of competency. The state did not subpoena Dr. Zenner. It was defendant who put him on. And I would also like to point out that the mental health experts were not appointed to conduct a competency hearing. They were appointed, as the court has obviously alluded to, to deal with the issue of insanity. Of course, when a defendant puts his insanity, when a defendant wants to put forth an insanity defense, the state does have the right to contest that and to request that he be dismissed. So competency was not at issue. It was never at issue. As the district court noted, the matters before the state court were the mental health evaluations. One, two of them were state evaluations. One was a psychologist who made the mental health evaluation. The other was a psychologist who made the mental health evaluation. And the third was a psychologist who made the gratuitous finding of competency. That question was not before him. He made it on his own, because, again, he wasn't appointed to the state experts were not put on to deal with a matter of competency, just the insanity. But what the court had before it in terms of the defendant's competency was the fact that Dr. Zenner was not put on the petitioner. And it turns out it's kind of helpful to us that he found that the petitioner was competent, because that's what the trial court had before it. The trial court had before it a finding of competency by one of the mental health experts. The trial court also had before it the treating psychiatrist, which is Dr. Zenner, which is the doctor that the petitioner put on at the change of plea. Dr. Zenner had avowed at the change of plea that the petitioner was competent. The court also had before it the fact that the defendant, the court also had the demeanor of the defendant before it. As I said, this matter took about 18 months to resolve. The defendant was present for a majority of the proceedings, not all of them, but a majority. We also have the fact that counsel failed to request a competency evaluation. On appeal, counsel would have this court believe that the record available to counsel should have led him to request a competency hearing. Your Honor, if you take a look at the material that was presented to the state court in post-conviction relief proceedings, and by this I'm referring to the first one. I'm sorry. I'm referring to the second post-conviction relief proceedings, where counsel raises the ineffective assistance of counsel claims, and counsel presents the court with the medical records of the petitioner. Those medical records consisted of the VA records, and, you know, this is a different standard of proof, obviously, but right in there it says, competent for VA purposes. So there was nothing that the attorney had before him to lead him to the conclusion that the petitioner was not competent. There was nothing before him. That's what I'm wondering about. The attorney had before him this year-old opinion of competency. Correct. And what else did the attorney have before him regarding competency? Well, he obviously had his dealings with the petitioner. He had his mental health records. He had dealings with the petitioner's psychiatrist. And from the very beginning, the petitioner's psychiatrist, the petitioner's psychiatrist, the petitioner's psychiatrist, there was a diagnosis presented to Michael Crow, Michael Scott, I'm sorry, shortly after representation began. And the diagnosis was that it was of the post-traumatic stress disorder, it was of a lower back syndrome. There was nothing in those records to lead counsel to believe. There was nothing from his interaction with counsel that would lead, I mean, there was nothing. And counsel's dealings with the treating psychiatrist, that would lead him to believe that petitioner was not competent. Counsel also had before it a distraught state of mind, a distraught state of mind, a distraught state of mind. In summary, because at a point in time, petitioner had self-committed, I'm not sure if that's the word, but he basically went to a psychiatric facility and says, I need, you know, I have some suicidal ideation, I need to be under observation. But that was done under treatment by the same treating psychiatrist that he's been, that was his psychiatrist from 1974, I believe, up until 1994. So this was a man, this was a psychiatrist who was obviously very familiar with the defendant's mental state. The state court also had before it a pre-sentence report, the pre-sentence report. And one of the things the defendant told the pre-sentence report writer, I'm hoping that the court will be able to find a way to make this a little bit easier to understand. He said, the court will follow the statutory provisions available for a person with mental disability and request that any sentence be served concurrently. So he basically, as this court is aware, there was an issue that, where defense counsel was really trying to broker a deal that would permit the defendant to be committed to a mental institution as opposed to a prison term. So that was the reason for, well, obviously I'm guessing here, but that was the reason that counsel basically sought the insanity defense and basically had the doctor appointed. So the whole gist of everything was to get the defendant into a state institution. But counsel, that's kind of suggestive that he wasn't competent. Isn't that right? Well, not at all, Your Honor. That's just, it's just not going to jail. As a matter of fact, one of the comments the defendant, the defendant made a number of comments regarding not wanting to go to jail. To his treating psychiatrist, at the time he basically had himself self-committed, he said, he expressed a fear of an impending incarceration. He said, he expressed a fear of an impending incarceration. This is to his own treating psychiatrist when he had himself self-committed back in 1992 or 93, I believe. To Dr. Eugene Armour, the ALMER, Dr. Armour recorded that the petitioner was consumed with thoughts of what may happen to him as a result of the collision. To Dr. Jeffrey Harrison, who was a psychologist, and this was in quotations, the petitioner says, put me in a hospital instead of jail. This is a man who was obviously aware of what he had done and was obviously aware of what the consequences were, and he did not want to go to prison a second time. But in any event, the recitation of the facts was not even necessary. The fact of the fact was that the defendant had been convicted, and it was not even necessary because petitioner has already received whatever, all the remedies that are available. The state court, even though it was not required to conduct a retrospective finding of competency, the district court reviewed the state record and concluded that the state court's decision not to order a competency hearing was not unreasonable. There is nothing left for the petitioner at this time. And if this Court has no further questions, my argument is completed. Mr. Kellefer. Yes, Your Honor. Just to address a couple points that were made by opposing counsel with regard to the equitable tolling issue to the extent the Court is entertaining that renewed argument by the state, the district court found as a matter of fact that the doctrine of equitable tolling should apply here. With regard to that, previous counsel from Mr. Warren supplied extensive information, nine specific points regarding ongoing severe mental health problems. Let's go on to what was before the defense lawyer at the first hearing. At the first hearing, Michael Scott, what was before him at that point was four reports from experts, Dr. Allmer, Dr. Harrison, and I believe Dr. Meyer. And what did those reports say? Those reports detail the effects of post-traumatic stress disorder upon Mr. Warren. That's to say, the only one that says anything about competency is Dr. Harrison's. And he said he was competent. And again, this is a year before. In the intervening year, he has, the counsel actually acquires all of these voluminous records from the VA and from different treating psychiatrists. So in other words, at the beginning of the case when he determined that it looks like there's really an issue here, my client and I aren't discussing things well, he appears to have serious mental problems, he notices the defense. That triggers a mechanism by which four experts actually interview him, one of which goes forward with competency evaluation. Although we don't know under what strictures, because he wasn't ordered to do so, it wasn't through the normal Rule 11 proceedings. And at that time, that's when the defense counsel then ordered all of this other information about prior post-traumatic stress disorder Presumably, he had ordered it as the process was going. So I don't know when he asked for it with regard to the previous, because my client had been seen by other psychiatrists and mental health professionals previous to this case. And again, decades-long treatment. Is it your claim that post-traumatic stress disorder renders a person incompetent? In this case, it seems highly likely that is the factual situation. I cannot speak to in every situation does post-traumatic stress disorder  Is there anything in the record before us that shows that that's the opinion of a valid expert? No, because no expert was ever specifically asked to perform a competency evaluation. Except Dr. Harris. And he wasn't asked to, so he says that he did so and found him competent, but because he wasn't asked to by the court or by counsel, we actually don't know what he did to find that. Is there anything forthcoming with the opinion that you need, that is, that post-traumatic stress disorder causes incompetence? What we do have is, well, Dr. Potts, for example, has specifically looked over the situation, the former head of the Correctional Health Services, and said it is his opinion that he was very likely incompetent, based on his review of what all the doctors had. And what we do know is we have post-traumatic stress disorder experts who have given information to the state, and we've asked them to review it. And we've asked them to review it in the state court at the post-conviction relief proceedings, saying that in this case, with Mr. Warren, that it has directly affected his ability to come to grips with daily life and reality. What we've asked for at the state court proceeding and the district court proceeding was a hearing, so we can actually bring this information and it can be tested under the fair light of the court. But we've yet to receive a hearing on these issues. Two summary denials at the state court level, followed by a summary, well, the district court went through the paperwork, but we didn't have, he would not grant an evidentiary hearing. The judge did not. And so what we've asked is that we be able to litigate these claims in an evidentiary hearing where experts can come forward and present this information to the court, so we will know once and for all what is the status, was he competent, what needs to be done with this. And from our perspective, the information that the defendant, excuse me, the appellant has, is that all the information points to he was very likely not competent when he entered the no-contest plea. All right, thank you very much.
judges: B. Fletcher, Thompson, Bea